Under extraordinary circumstances, a district court has authority to expunge a conviction as part of its ancillary jurisdiction over the original criminal case. This case is exactly such an extraordinary case. Eileen Crowell suffered a conviction for something she did not do. She told the judge repeatedly that she was innocent of the crime, that she had no criminal intent. Under what grounds, counsel, can we issue an expunction? I think the district court can issue an expunction if the conviction is unlawful or, as stated in the Sumner case, tainted by illegality. And that is why I'm asking the court to make a determination that there was indeed an unlawful conviction that would confer authority on the district court. You have no statutory grounds here for arguing for expunctions? Yes. 3231, which I believe in Sumner is what they held, there is a statutory authority as part of the ancillary jurisdiction. Do you have a statute that says in an Alford plea or under convictions for tax fraud, you may seek expunction from a district court? No. You don't have any specific statutory language that you're really relying on here. You're relying on sort of the general authority of the federal court. Relying on the Sumner case, which interpreted the original jurisdiction of the district court through the lens of the component, the Supreme Court decision describing the original jurisdiction and the authority. What would make a conviction unlawful? I believe three things in this case would certainly make it unlawful, and that is the that is not supported by strong evidence of guilt as required by the Supreme Court. By one, it's in violation of the Fourth Amendment because the proper material is used that was seized in violation of the Fourth Amendment as found in the co-defendant's case. And third, where there's a violation of the Sixth Amendment here, an actual conflict that adversely affected the representation. Counsel, all of those are grounds for obtaining a reversal of a conviction on appeal. There might be grounds on which one might seek a writ of habeas corpus, but your client didn't seek a writ of habeas corpus and didn't file an appeal. All the court's opinions about the expunction power are separate from and Sumner explicitly was setting out an authority separate from habeas corpus, direct appeal, or anything else. It is a going back and saying, was it tainted by illegality? Was it an unlawful conviction? If you're right, counsel, this general power that the federal courts hold would be an alternative to either direct appeal or habeas corpus in every criminal case. That's not what the Ninth Circuit stated in the Sumner opinion, which I believe adopted the Smith formulation, that this is an extraordinary, exceptional remedy. I believe that this case- So just when we have extraordinarily unlawful convictions? We have the extraordinary confluence of not only an unlawful conviction, but also the equitable considerations that can be reached once there is a determination that the conviction was unlawful. Well, as I read Sumner, the court held that we did not have the power to issue expunction on purely equitable grounds. That is exactly right. On solely equitable grounds, it's only where there's also a showing that the arrest or conviction was unlawful or tainted by illegality. I believe that this case, if any case exists where there is a tainted by illegality, this is where it's happened. These are very unusual circumstances where you have an actual conflict of interest going on that's not disclosed to the court where there could not be a greater adverse interest between an innocent person and a guilty person represented by the same person in a package deal negotiation. Counsel, why isn't your proper remedy a writ for quorum novus instead of one for expunction? Your Honor, the Ninth Circuit has recently had opinions on the writ of quorum novus in terms of limiting those options, and as the appointment in this particular case came, the pro se request went to Judge Marsh requesting expunction. Judge Marsh appointed counsel to pursue that issue on her behalf, and we are proceeding on the expunction theory. Okay. I don't think you still answered my question. Why isn't your appropriate remedy, since the sentence has already been served and your client is no longer incarcerated, why isn't your appropriate remedy quorum novus? Just generally, a post, habeas corpus is what happens when you still have the body and your client is now free. Why isn't the appropriate remedy quorum novus? Your Honor, I can only say that I recognize that in Sumner the court pointed to quorum novus and recognized that expunction does provide a separate remedy, and that's the one that we are pursuing, which is basically an erasure of the criminal conviction, not a, as far as future use in employment and other civil liabilities for her. Counsel, are you contending that the arrest was unlawful, or only the conviction? We've contended in the briefing that the conviction is unlawful. As the court poses the question, because the search and seizure after these proceedings was determined by the court to violate the Fourth Amendment, and that the arrest warrant was, of course, based in part upon that, there would be an argument that the arrest was also impaired by the Fourth Amendment violation. And that the Fourth Amendment violation is directly connected to the proper in this case and the only evidence that there was a tax violation. The government's excerpt of record of page 56, there is a letter in which they basically say, look, the husband's lawyer is writing to Mr. Scruggs, the prosecutor, stating, we won the motion to suppress the records, and as a result, resulting in the dismissal of the tax fraud and money laundering prosecution. So there's a direct connection. We know that the only thing that was based upon which this conviction is based is a Fourth Amendment violation. That's unlawful. That's tainted by illegality. That at least confers upon the district court a power to exercise the disfunction authority. Wasn't there evidence separate and apart from the seized evidence that was used to support the Alford claim? There is not a syllable in the record that I've been able to find that indicates anything other than the initial search and seizure involved an IRS agent and the State Department of Justice financial analyst. I've attached as an appendix the return, financial records, tax records, receipts, and then the whole theory of the proper by the government guilt is, well, our financial analyst, by this self-same agent, discloses that there was unaccounted for income. Maybe the government can answer that question. I doubt it, but we'll see. Certainly not from the record. Unless there are questions right now, I request that the remaining time be reserved for recall. Okay. Thank you, Counsel. I'm going to place the court. My name is Richard Scruggs. I represent the United States in this appeal. I want to begin with a question Your Honor was asking or suggesting I might be able to address first. And let me say, in this case, I think the record is important. I think an accurate understanding of the record is important. Our issue in this appeal has nothing to do with the end sought. The end sought here is employment opportunity for this defendant. That's what generated or initiated this process was a letter by her to the court indicating she had a job opportunity. If there was some way she could have her conviction set aside, it would help. Our issue isn't with the end result. Our issue is with the means used in an effort to achieve that result. I submit to the end to not justify those means. And I go then to the accuracy of the record being of paramount importance. Because I do feel that, and I don't fault Mr. Sadie as an intentionally undertaking to mischaracterize the record. This is an old case. It's 13 years. I was, if it could be called fortunate, fortunate enough to have it be my first federal criminal case. And so I am very familiar with this case. I personally handled it. So I read the record and I see arguments made such as is found in the reply brief of Mr. Sadie, which I did not have an opportunity to respond to. An illustration of page 10 where he asserts, long before the proffer was submitted, and he's speaking, as I understand it, about the factual basis submitted for the offer. The government was aware from its debriefing of Ms. Crow's husband that he repeatedly exculpated Mrs. Crow, emphatically stating that she was completely unaware of his activities. And it cites many, many pages from the transcript of the husband's proffer for his cooperation agreement. It goes on to suggest, and this is where I got great concern. Mr. Sadie goes on to suggest that the proffer did not mention the exculpatory information. And I take it from that suggestion that the government withheld information in the exculpatory that was in the proffer by the husband in providing this factual basis for the Alford plea. Your Honor, the record can't be clearer. The Alford plea submission, both the written that I submitted for the plea and my oral statement for the record at the time of the plea, all occurred on November 13, 1990. The proffer by the husband, where he was interviewed at length and his entire transcript in there, did not occur until November 16, 1990, three days later. That seems, I mean, I don't think it's important whatever the husband said because the government submitted much information the defendant would argue is irrelevant or beyond the narrow issues. We submitted information about the co-defendant, Mr. Bradley's debriefings and what was learned from him. And that only became, in my mind, relevant to consider if seriously a consideration was going to be required or had to send. So, counsel, where in the record is the information that I inquired about? What evidence was there separate and apart from the evidence that was suppressed to support the Alford plea? Yes, Your Honor. That's found at SCR 90 through 92 most precisely and directly at the point. And that is my oral statement of facts supporting the Alford plea to supplement the written statement. Did that refer to evidence in the record that was separate and apart from that, which was the subject of the successful motion to suppress? Your Honor, I don't believe it did. Well, then let me tell you what the exact evidence was. And you can see why I conclude that. Particularly, I'm looking at the bottom of SCR 90 or the top of SCR 91 and then the top of SCR 92, where I speak of accounts and amounts and returns. So the tax return for 1986, which was the tax year the 1987 signature was made for, the tax return, which exists in IRS files accessible to them without reference to any searches, showed a gross, adjusted gross income of $9,773. And to what was that compared? That was compared to identifications of adjusted gross income that should have been reported and determined by the agent from his investigation to be $49,102. And upon what was that determination made? Wasn't that made based upon bank records that were seized as a result of that search, of the search that was suppressed? That question, quite frankly, cannot be answered. It was certainly based on analysis of bank records as well as analysis. How were those bank records obtained? Your Honor, I can't answer that question. The search occurred on 1989. The case was not ready for grand jury until May of 1990. And the proper information for the proper for the Alfred plea was prepared and submitted in November. More than a year after the searches, there's a claim to be the basis for the information. And that agent, over that period of time, gathered information. If I could go, because your question is... Was that information all within the information that was suppressed or not, do you know? I don't. I can rely, I can trust that there was other sources for that information to be obtained. Counsel says we should be here arguing inevitable discovery. It is the defendant's burden to prepare to present grounds for jurisdiction. Sumner recognizes that. He just points to a search warrant return and asks you to assume that the generic descriptions of documents are where the information came from. There's other sources for that information that could have provided that information. What were the other sources for the bank records? Well, I go to now to the top of page 92, Your Honor. And this speaks of a bank account coming up from the bottom of page 91 to the top of SCR 92. Of a bank account in the name of this defendant, which she used to pay for expenses for her mother's nursing home care. Then how would the government have gotten that information? The interest from that account would have been reported to the IRS and would have appeared on the tax return for 1986, Your Honor. And I don't know how, I couldn't tell you how the agent, but he's retired. And it would require litigating the issue and trying to trace it. And there's other reasons that I don't believe that is the touchstone of this case. But I see here in this record a basis that could be independent of that search. And existed, in fact, you could reasonably conclude it existed, evidence directing the agent to a bank account, which is in the name of this defendant, which for tax year 1986 showed deposits of about $28,000. That's more than twice as much as the reported adjusted gross income for that year on the tax return. And of that $28,000 was $16,000 cash. And just on the face of it, putting it in an account in this defendant's name coming out of a bank account was reporting interest to the IRS. And should be reflected that interest on the return, whether it is or not, I don't know. But they would certainly get the notice of the account information. And then it would be about a step of acquiring the account statements and identifying these deposits and comparing them to what was reported on each one of the adjusted gross income on the tax return. My point that I made a minute ago that this is not the linchpin. If there is a linchpin in this case, the linchpin would be I submit. March 28th, 1991, defendant with her attorney, Mr. Finer, appeared in front of Judge Marsh after having been in front of Judge Marsh a week earlier where all the concerns came up. And as she appeared that day, I unilaterally moved to have this representative. This agreement was no longer joint and either of these defendants could proceed however they wish. And if one wanted to withdraw a plea and the other one stay with the plea, I had no objection. If both wanted to withdraw their plea, I had no objection. If they both wanted to stay with their plea, I had no objection. There was nothing tying that attorney and this defendant to any strategy. And that decision that she made was made with Judge Marsh, making it clear from the week before and again that day that he was concerned and wanted to be sure she knew what she was doing and understood that this is what she wanted to do. And a decision then made by her in the context of all those circumstances together with the fact that what was apparently the heart of Judge Marsh's concerns was the argument made by Mr. Crowell for a downward departure to a greater extent than the government was prepared to recommend. That his client had foregone exercise of constitutional rights in the form I imagine of moving to suppress evidence by having to take this joint plea. And the severance of the plea agreement so that they could individually proceed eliminated that issue. He then chose to pursue his motion to suppress and there's nothing at that moment to prevent this defendant from pursuing that motion to suppress. Counsel, before we finish, does the government admit that in a case in which if this court were to find that either the arrest or the conviction of a defendant was unlawful, that the court has power to expunge the records post conviction and post the serving of the sentence? I don't think the Sumner case affords the basis to say there's that authority because I argued to Judge Marsh in my memo that it was dicta because it wasn't necessary to the decision. Baxter did not present that claim. And your question is does the court have authority? Frankly, your honor, I would hope the court has that authority because I could have any of us in our imaginations to think of a case where you would wish to do justice. If there was a question for no doubt of innocence, for example, I don't know if that authority can be found to exist. I'm saying this. I'm not acknowledging this is the case. Obviously, I don't think it exists. Because there is no unlawful conviction here. It's a voluntary plea. If there is a case, I only say it would be nice to know that justice would be right. I think that means tailoring the remedy in a manner to fit those kind of anticipated circumstances or a circumstance before the court in a way that also considers all the other policy considerations such as statutory obligation of our department to maintain criminal records. I don't know what it means to expunge this conviction if it were expunged. Does it mean they're all burned or they're all put in a sealed envelope and you ferret out any reference to it anywhere? I think the scope of the remedy is an issue, too, that has to be addressed. I think when the fundamental question about whether there's a wrong or there needs to be a right, I agree that there should be a right for the wrong. I think another case may present the court with an opportunity to fashion that and also to give attention to the consequences of the scope of the remedy. All right. Thank you, counsel. Thank you. Mr. Potter? First, I'd like to clarify the sequence of events regarding the proffer. The proffer was first submitted on November 13th. Three days later, Mr. Crowell was debriefed. The proffer did not become final as far as the Alfred plea being accepted until March. That was the period of time to which I was referring, and I apologize for any lack of clarity on that point. The records that were referred to as far as the primary illegality is clearly established. The third page of the appendix sets out search warrant return. On the third page is tax records. On the second page is bank records. It's obvious that the Russ Ward IRS agent analysis was based on the illegally seized evidence, and as a matter of law, once that Was that the only source of bank records and tax records? Yes. There's nothing else in the record to show anything beyond speculation that they went off and got any information on their own, and I believe that this oral argument is the first time there's any reference to any interest statement and an inference drawn. Why would they bother? They'd already seized the tax records for those years and the bank records. Why didn't she protest at the time? Why wasn't this objection raised 13 years ago? Why wasn't it raised in habeas corpus? I believe that the answer to that is the conflicted counsel. There's never an interest, as that key piece here is the letter from Mr. Kroll's counsel to Mr. Kroll himself saying, Now that Eileen's out of the case, we've got our mission accomplished because we want you to bring no charges or a probationary sentence. They never wanted to bring a trial case. They never wanted to do anything else because they had a basic conflict of interest. But Judge Marsh, who handled this trial, seemed to think that Mr. Feiner had done an admirable job and he seemed to be a vigorous and effective advocate. I don't believe he said that, and I don't think that as far as the standard, especially in the Rodriguez case that's just come down on the 27th of October that we provide the court with through a 28-J letter, that under those circumstances, there is an actual conflict. And as far as prejudice, that that is presumed when you have people with contrary influences, an influence to not go to trial, for example, and a viable alternative. A viable alternative was trial for an innocent person. Counsel, under that Rodriguez case that you cited, doesn't there have to be a demonstration that counsel's performance was affected? And I believe we have done exactly that with the letter showing in a number of ways why a guilty person has a different interest than an innocent person. And in a package deal context, both this court and the Supreme Court in Gordon-Kircher have recognized the danger of having joint representation. But didn't the government disengage the two cases? Yes, at the time of sentencing, after the whole process was done, that there was a statement of that. And I might add that the failure to file a motion under Alvarez, the case that we've cited as the alternative grounds for the Fourth Amendment violation, not only is it a violation and unlawful under Wong-Song, but under Alvarez, it's ineffective assistance of counsel to go back, not to go back and try to correct the error once the suppression occurs. So I think we've developed that on both. At what point did you know of this alleged conflict between the two lawyers? I believe that it came to light when Judge Marks requested that we look into it, made the usual request for records, as you'll notice, from Mr. Finer's affidavit. There wasn't a separate file from Mr. Kroll's. Mr. Kroll's file was one and the same as Mrs. Kroll's file. And in that file is the letter that discloses the conflict. Your discovery of the conflict then occurs what year? Two years ago, a year ago, five years ago, ten years ago? I believe the course of proceedings statement says that we filed in October of last year after being appointed in June. So nobody was aware of the conflict between the two lawyers or the connection between the two lawyers until two years ago. That's when I discovered it as counsel for Mrs. Kroll, appointed by the judge. All right. Thank you, counsel. Thanks to both counsel. The case that's argued is submitted. The next case on calendar for argument is United States v. Terry Crespo.
judges: Alarcon, Rawlinson, Bybee